IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLEXIBLE TECHNOLOGIES, INC.,<br>    Plaintiff,<br> v.<br>SHARKNINJA OPERATING LLC, SHARKNINJA MANAGEMENT COMPANY, and SHARKNINJA SALES COMPANY,<br>    Defendants. | Civil Action No. 18-348-CFC |

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, Delaware; Jeffrey M. Fisher, Deepak Gupta, Winston Liaw, FARELLA BRAUN + MARTEL LLP, San Francisco, California

*Counsel for Plaintiff*

Jack B. Blumenfeld, Jeremy A. Tigan, MORRIS, NICHOLS, ARSHT, & TUNNEL LLP, Wilmington, Delaware; Robert W. Kantner, JONES DAY®, Dallas, Texas

*Counsel for Defendants*

**MEMORANDUM OPINION**

March 29, 2019
Wilmington, Delaware

CONNOLLY, UNITED STATES DISTRICT JUDGE

Flexible Technologies, Inc. has filed a six-count complaint against Defendants SharkNinja Operating, LLC, SharkNinja Management Company, and SharkNinja Sales Company (collectively "SharkNinja") for patent infringement (Count 1); misappropriation of trade secrets under South Carolina law (Count 2); misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count 3); breach of agreement (Count 4); breach of the covenant of good faith and fair dealing (Count 5); and unjust enrichment (Count 6). SharkNinja has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all but Count 1 of the complaint for failure to state a claim upon which relief can be granted. D.I. 41. For the following reasons, I will grant in part and deny in part the motion.

I. BACKGROUND[1]

Flexible Technologies designs and manufactures "high-end flexible, stretchable, retractable, and current-carrying hoses for a variety of applications in a

---

[1] As I am assessing the merits of a Rule 12(b)(6) motion to dismiss, I accept as true all factual allegations in the complaint and view those facts in the light most favorable to Flexible Technologies. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

wide range of industries." D.I. 1 at ¶ 11. SharkNinja designs and manufactures vacuum cleaners. *See id.* at 1; *id.* at ¶ 17.

In early 2012, SharkNinja sought Flexible Technologies' assistance in designing a current-carrying self-retracting stretch hose for a new vacuum cleaner product line SharkNinja was developing. This product line ultimately became the Shark Rotator Powered LiftAway™ vacuum (the "LiftAway"). *Id.* at ¶ 17. Flexible Technologies agreed to assist SharkNinja and began a collaborative development project with SharkNinja to custom engineer Flexible Technologies' innovative and proprietary hose technology for the LiftAway. Over the course of the following two years, as part of this project, Flexible Technologies disclosed to SharkNinja Flexible Technologies' "methods, techniques, know-how and other confidential information and trade secrets . . . in a series of meetings and other communications." *See id.* at 1–2.

From the outset of their relationship, Flexible Technologies and SharkNinja had "an implicit understanding, duty and agreement . . . that all information, know-how, and technical guidance provided by [Flexible Technologies] . . . was to be maintained in confidence, and not be used without permission for any purpose other than [SharkNinja] doing business with [Flexible Technologies]." *Id.* at ¶ 22. This implied understanding was eventually formalized and reduced to a writing in the form of a "Visitor Confidentiality Agreement" signed by one of SharkNinja's

2

employees during her visit to Flexible Technologies' factory in Abbeville, South Carolina. *See id.* at ¶ 24–26; *see also* D.I. 1–2, Ex. B. The agreement provides in relevant part:

> The undersigned is being admitted, and may from time to time in the future be admitted, to the premises of Flexible Technologies, Inc. ("Flexible"), in consideration of which the undersigned hereby *confirms his/her continuing understanding and agreement as follows:*
>
> 1. For purposes of this Agreement, "Confidential Information" shall mean information (i) not generally known by non-FLEXIBLE personnel and (ii) gained by the undersigned through or as a result of the undersigned's relationship with FLEXIBLE or access to any of FLEXIBLE's premises on *this or any other occasion.* Confidential [I]nformation also includes any similar information which FLEXIBLE obtains from a third party and which [FLEXIBLE] treats as proprietary or confidential, whether or not owned by FLEXIBLE.

D.I. 1–2, Ex. B at 2 (emphasis added).

In early 2014, SharkNinja stopped all communications with Flexible Technologies and soon thereafter began to sell LiftAway vacuums that incorporate imported hosing technology that is "indistinguishable" from the patented and proprietary hosing technology Flexible Technologies disclosed to SharkNinja. *See* D.I. 1 at ¶ 27, ¶ 29. SharkNinja never sought Flexible Technologies' permission to

use Flexible Technologies' patented and proprietary technology in the LiftAway and has never compensated Flexible Technologies for SharkNinja's incorporation of that technology in the LiftAway. *See id.* at 2; *id.* at ¶¶ 61–62, 70.

## II. LEGAL STANDARDS

To state a claim upon which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to Flexible Technologies. *Umland*, 542 F.3d at 64.

## III. DISCUSSION

### A. Misappropriation of Trade Secrets (Counts 2 and 3)

SharkNinja argues that both trade secret misappropriation counts should be dismissed because Flexible Technologies failed to identify its trade secrets with particularity in the complaint and because the allegations in the complaint establish

4

as a matter of law that Flexible Technologies did not take sufficient precautions to protect its trade secrets. SharkNinja also argues that the DTSA misappropriation count should be dismissed because the DTSA became effective after the alleged misappropriation began.

### 1. Identification of Trade Secrets with Particularity

The parties agree that under both the DTSA and South Carolina law, "[t]o plead misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *ASC Partners, LLC v. Am. Grp., Inc.*, 2010 WL 883663, at *10 (W.D.N.C. Mar. 5, 2010). Courts, however, "are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 636 (D. Del. 1991) (citation omitted). For example, the United States District Court for the District of South Carolina found that a complaint identified trade secrets with sufficient particularity where the complaint alleged that an "improvement" to a particular technology amounted to a trade secret, that the purported mis-appropriator entered a "Confidential Nondisclosure Agreement" relating to the technological "improvement," and that

the purported mis-appropriator exploited the technological improvement. *Milliken & Co. v. Weiner*, 2015 WL 5474647, at *3 (D.S.C. Sept. 17, 2015).

In this case, Flexible Technologies has identified its trade secrets with sufficient particularity to survive a motion to dismiss. According to the complaint, Flexible Technologies supplied SharkNinja with Flexible Technologies' "know-how" relating to "current[-]carrying self-retracting stretch hoses" that "optimiz[ed] retractability, comfort, aesthetics, safety, durability, and other important features." D.I. 1 at ¶ 21. This "know-how" included: "the composition of [Flexible Technologies'] product," *id.* at ¶¶ 50, 60; "the material texturing of the product," *id.*; "methods of testing and manufacturing to ensure product reliability," *id.*; and "methods to not rely on, know[-]how, and negative information relating to the same, including what kinds of potential modifications to current-carrying hoses would not work." *Id.* Flexible Technologies conveyed this know-how at least in part in the form of "numerous detailed technical drawings of its proprietary current[-]carrying self-retracting stretch hose, and other technical information not covered by or related to the [Flexible Technologies'] Patent, such as material characteristics, texturing, and test protocols." *Id.* at ¶ 23. This level of detail, in my view, provides SharkNinja with sufficient notice about the nature of the trade secrets alleged to have been misappropriated.

## 2. Reasonable Efforts to Safeguard Trade Secrets

SharkNinja argues that both trade secret counts should be dismissed because the allegations in the complaint "show that [Flexible Technologies] did not take sufficient precautions to preserve the confidentiality of the alleged trade secrets." D.I. 42 at 2. I disagree.

Under both the DTSA and South Carolina's trade secret misappropriation statute, information cannot constitute a "trade secret" unless the owner of the information took reasonable efforts to keep the information secret. *See* 18 U.S.C. § 1839(3); S.C. CODE ANN. § 39-8-20(5). South Carolina's Supreme Court has interpreted this "reasonable efforts" standard to require the exercise of "eternal vigilance." As the Court explained in *Lowndes Products, Inc. v. Brower*, 191 S.E.2d 761 (S.C. 1972):

> [I]f the person entitled to a trade secret wishes to have its exclusive use in his own business, he must not fail to take all proper and reasonable steps to keep it secret. He cannot lie back and do nothing to preserve its essential secret quality, particularly when the subject matter of the process becomes known to a number of individuals involved in its use or is observed in the course of manufacture within plain view of others. . . . As a naturally known member of the patent bar has written, one who claims that he has a trade secret must exercise eternal vigilance. This calls for constant warnings to all persons to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it. To exclude the public

7

from the manufacturing area is not enough.

*Id.* at 766 (citations and internal quotation marks omitted). SharkNinja argues—without any supporting case citations—that "[t]here is no reason to think the reasonable precaution standard is to be treated less strenuously under [the DTSA]" than it has been "treated" by the South Carolina Supreme Court. *See* D.I. 42 at 8.

Because the complaint alleges facts from which it can be plausibly inferred that Flexible Technologies exercised eternal vigilance to keep its information secret, I need not address whether a less strenuous standard of "reasonable efforts" governs the DTSA. Flexible Technologies alleges, for example, that:

> [its] facilities are protected by perimeter fences and its docks are gated, its exterior doors are locked and people can gain access only with a bar-coded badge or other security clearance, all digital networks and file servers are password protected, employees are subject to a variety of background checks, and engineers as well as visitors to [Flexible Technologies'] manufacturing floor are subjected to contractual requirements which include non-disclosure and confidentiality obligations.

D.I. 1 at ¶ 15. Flexible Technologies also alleges that it implemented physical and digital security measures, confirmed its confidentiality agreement with SharkNinja in writing, marked technical drawings and other documents as proprietary, and stated in e-mails that the contents of those messages include proprietary information. *See id.* at ¶¶ 23–26, 48, 60; D.I. 1-2, Ex. B. It can plausibly be inferred from these alleged facts, when examined in the light most favorable to

8

Flexible Technologies, that Flexible Technologies undertook reasonable efforts and employed eternal vigilance to safeguard its trade secrets. The alleged actions are clearly more than just "exclud[ing] the public from the manufacturing area"; and they do not equate to "l[ying] back and do[ing] nothing to preserve [the] essential secret quality" of Flexible Technologies' proprietary hosing technology. *See Lowndes*, 191 S.E.2d at 766.

### 3. Whether the Alleged Acts are Covered by the DTSA

SharkNinja argues that the DTSA count must be dismissed because the misappropriation of trade secrets occurred before the enactment of the DTSA on May 11, 2016. The complaint, however, which was filed in 2018, alleges that Shark improperly "*used* and disclosed FTI's trade secrets in the process of obtaining current-carrying self-retracting stretch hoses for ultimate use and sale in its line of vacuum products that embody these trade secrets, including its line of Rotator Powered Lift-Away vacuums, *and continues to do so*." D.I. 1 at ¶ 61 (emphasis added).

The DTSA defines "misappropriation" to include the "use" of the trade secret in question. § 1839(5)(B). Accordingly, the complaint's allegations regarding use and sales after May 2016 of vacuums that embody Flexible Technologies' trade secrets and the continuing use and sales of such vacuums fall within the scope of the DTSA. *See Christian v. Lannett Co., Inc.*, 2018 WL

9

1532849, at *3–4 (E.D. Pa. Mar. 29, 2018); *Marimar Textiles, Inc. v. Jude Clothing & Accessories Corp.*, 2017 WL 4391748, at *6 (D.N.J. Oct. 2, 2017); *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, 2017 WL 1105648, at *8 (E.D. Pa. Mar. 24, 2017).

### B. Breach of Agreement (Count 4)

SharkNinja argues that the breach of agreement count should be dismissed because Flexible Technologies has failed to allege sufficiently the terms of the agreement. I disagree.

To survive a motion to dismiss a claim for breach of contract under South Carolina law, a plaintiff "need only plead (1) the existence of contractual obligations binding upon [the defendant] . . . ; (2) [the defendant's] breach of those obligations; and (3) damages resulting from such breach." *Milliken & Co. v. Evans*, 2016 WL 470017, at *5 (D.S.C. Feb. 8, 2016). In this case, the complaint alleges the existence of an implied understanding regarding the confidentiality of Flexible Technologies' proprietary information and trade secrets. *See* D.I. 1 at ¶¶ 65, 69. It further alleges that the implied agreement was reduced to a written agreement that was signed by one of SharkNinja's senior employees, *id.* at ¶ 24; and that SharkNinja breached the agreement by "taking, transferring, disclosing and/or using the technical know-how and proprietary information that it obtained through its relationship with [Flexible Technologies] to obtain current-carrying

10

self-retracting stretch hoses and using them in its products without buying those components from [Flexible Technologies] or paying a license or royalty fee to [Flexible Technologies]." *Id.* at ¶ 70.

## C. Breach of Covenant of Good Faith and Fair Dealing (Count 5)

SharkNinja argues that the breach of the covenant of good faith and fair dealing count should be dismissed because, under South Carolina law, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from [a] claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004). Flexible Technologies offered no argument to rebut SharkNinja's argument, but rather stated that its implied covenant claim "will be merged with its breach of agreement claim." D.I. 48 at 20. Accordingly, I will dismiss Count 5.

## D. Unjust Enrichment (Count 6)

SharkNinja asserts that Flexible Technologies' unjust enrichment count should be dismissed for the same reasons that the trade-secret claims and the breach of agreement claim should be dismissed. Accordingly, because I will not dismiss the trade-secret and breach of agreement counts, I will not dismiss the unjust enrichment count.

## IV. CONCLUSION

For the foregoing reasons, I will grant SharkNinja's motion to dismiss Count V and otherwise deny SharkNinja's motion to dismiss.

The Court will enter an order consistent with this Memorandum Opinion.